## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Criminal No. 24-cr-10225-WGY |
| | ) | |
| SAMUEL JEAN-BAPTISTE, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Samuel Jean-Baptiste pled guilty to a two-count Indictment charging him with conspiracy to distribute and possess with the intent to distribute controlled substances, in violation of 21 U.S.C. § 846, and possession with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii). This Court scheduled sentencing for November 24, 2025. For the reasons set forth below and to be articulated at the sentencing hearing, the Government believes that the mandatory minimum sentence of 120 months of imprisonment, a fine within the Guidelines Sentencing Range (unless the Court finds Defendant unable and unlikely to become able to pay a fine), 60 months of supervised release, a $200 mandatory special assessment fee, and forfeiture as described in the plea agreement filed in this matter is the appropriate sentence in this matter.

## FACTUAL AND PROCEDURAL BACKGROUND

The Defendant, age 39, pled guilty to the above-described two-count Indictment on September 3, 2025. Presentence Investigation Report ("PSR") at p. 2, ¶ 2. There is a plea agreement in this case pursuant to Fed. R. Crim. P. 11(c)(1)(C). PSR ¶ 3.

In early July 2023, a confidential source told investigators that Defendant was a significant drug dealer in the Boston area. PSR ¶ 8. Investigators then worked with confidential sources to

conduct three controlled buys from JEAN-BAPTISTE on August 28, 2023, September 21, 2023, and January 19, 2024.  PSR ¶ 8.

Prior to the August 28, 2023 controlled buy, JEAN-BAPTISTE told the confidential source he would send a runner to deliver the drugs and pick up the payment, but later said he would deliver it himself.  PSR ¶ 9.  When JEAN-BAPTISTE showed up to the controlled buy, he had someone drive him in a Rolls Royce, then JEAN-BAPTISTE exited the Rolls Royce to conduct the transaction and then returned to the Rolls Royce to drive away from the area of the transaction. PSR ¶ 9.

Similarly, during the September 21, 2023 controlled buy, JEAN-BAPTISTE arrived at the transaction in a BMW operated by an unknown black male.  PSR ¶ 10.  After JEAN-BAPTISTE exited the BMW and conducted the transaction, JEAN-BAPTISTE returned to the BMW and was driven to a parking area.  PSR ¶ 10.  At the parking area, JEAN-BAPTISTE exited the BMW and entered a Volkswagen Passat that he then drove away from the area.  PSR ¶ 10.

During the January 19, 2024 controlled buy, JEAN-BAPTISTE was again driven by an unknown individual to conduct the transaction, returned to that car, and then was driven to a Chevy Malibu that JEAN-BAPTISTE drove away from the area.  PSR ¶ 11.  In the course of the January 19, 2024 transaction, investigators introduced a new confidential source.  PSR ¶ 11.

In the course of those controlled buys, JEAN-BAPTISTE sold confidential sources over 680 grams of fentanyl.  PSR ¶ 12.

Subsequently, this new confidential source communicated with JEAN-BAPTISTE for months in recorded phone calls and text messages to set up a drug deal for approximately 10 pounds of methamphetamine on May 29, 2024.  PSR ¶ 13.  During the course of these communications, JEAN-BAPTISTE referred to other people that could assist in the delivery and

pickup of the drugs.  PSR ¶ 13.  On May 29, 2024, JEAN-BAPTISTE arrived at the agreed-upon location as communicated via text message and emerged from his vehicle carrying a backpack. PSR ¶ 13.  Investigators arrested JEAN-BAPTISTE and seized the backpack, which contained a substance that laboratory testing confirmed to be 4,231.3 grams of 99% pure methamphetamine. PSR ¶ 13.

## DISCUSSION

### I.    Sentencing Guidelines Calculation

Probation has calculated the Defendant's total offense level as 35.  PSR ¶ 30.  This is based on a base offense level of 38 using the drug quantity table (U.S.S.G. § 2D1.1(a)(5) and 2D1.1(c)(1)); and a three-point reduction for acceptance of responsibility (U.S.S.G. § 3E1.1(a), (b)).  PSR ¶¶ 19-29.  The Government agrees that this calculation by Probation is correct.

Probation has calculated the Defendant's criminal history category as III.  PSR ¶ 38.  This is based on a total of six criminal history points resulting from Defendant's 2009 conviction for armed and masked robbery, armed assault in a dwelling, and other related charges.  PSR ¶ 36.  The Government agrees that this calculation by Probation is correct.

The Guideline Range for a total offense level of 35 and Criminal History Category III is 210-262 months.  PSR ¶ 96.  The Government agrees with Probation's calculation of the Guideline Range based on the PSR's calculation of the offense level.  The Government notes that it came to a different Guidelines calculation in the plea agreement entered into with the Defendant, but the Government maintains that its proposed sentence is still appropriate here and stands by the terms of the agreement.

The mandatory minimum for counts 1 and 2 is 120 months.  PSR ¶ 95.  Here, the Government is seeking the mandatory minimum sentence of imprisonment for 120 months.

II.    <u>**Application of the Section 3553(a) Factors**</u>

The Court must consider the factors set forth in 18 U.S.C. § 3553(a) in determining a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing set forth in § 3553(a)(2).  These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.  They also require courts to consider the kinds of sentences available and the Guidelines Sentencing Range ("GSR").  Here, the Government believes that the mandatory minimum sentence of 120 months of imprisonment, a fine within the Guidelines Sentencing Range (unless the Court finds Defendant unable and unlikely to become able to pay a fine), 60 months of supervised release, a $200 mandatory special assessment fee, and forfeiture as described in the plea agreement filed in this matter is sufficient, but not greater than necessary, to achieve the goals of § 3553(a)(2).

A.    **Nature and Circumstances of the Offense**

As noted above, the Defendant sold nearly 5,000 grams of methamphetamine to confidential sources during the course of this investigation.  PSR ¶¶ 12, 13.  As the Court is aware, methamphetamine is a deadly and highly addictive drug that is an increasingly serious problem throughout the United States and in the District of Massachusetts.[1]  The proportion of federal drug trafficking cases involving methamphetamine has steadily increased over the past 20 years, accounting for 48.7% of all drug trafficking cases in 2022, and becoming the predominant drug

---

[1] Martha Bebinger, *"Meth Use Is Rising In Boston, Intensifying The Opioid Crisis,"* appearing at https://www.wbur.org/news/2018/11/21/meth-worsening-opioid-epidemic (last accessed May 7, 2025).

trafficked over the last decade.[2]  Abuse of this potent stimulant is plaguing many parts of the country, and the government has seen a significant rise in the amount of methamphetamine in the District of Massachusetts over the course of the last several years.

Methamphetamine is second only to fentanyl in causing drug-related deaths in the United States.[3] The Centers for Disease Control and Prevention ("CDC") found that overdose deaths from psychostimulants, comprised mostly of methamphetamine, increased by 703% from 2011 to 2021.[4]  Moreover, the Drug Enforcement Administration found that 31% of drug-related deaths in the United States are caused by psychostimulants – mostly methamphetamine.[5]  Based on data available as of March 2, 2025, there were at least 30,682 recorded methamphetamine-related deaths nationwide for the prior 12-month period.[6]

In recent years, methamphetamine has become much more prevalent in the Northeast.[7] The purity of methamphetamine has also increased.  As the New York Times has reported, this

---

[2]  United States Sentencing Commission, *Methamphetamine Trafficking Offenses in the Federal Criminal Justice System,* appearing at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2024/202406_Methamphetamine.pdf, at 16 (last viewed May 7, 2025) ("USSC 2024 Methamphetamine Trafficking Offenses").

[3]  Drug Enforcement Administration, *2024 National Drug Threat Assessment*, appearing at https://www.dea.gov/sites/default/files/2024-05/5.23.2024%20NDTA-updated.pdf, at 6 (last viewed May 7, 2025) ("DEA 2024 Assessment").

[4]  USSC 2024 Methamphetamine Trafficking Offenses, at 6.

[5]  DEA 2024 Assessment, at 1.

[6]  National Center for Health Statistics, *National Vital Statistics System, Provisional Drug Overdose Death Counts,* appearing at https://www.cdc.gov/nchs/nvss/vsrr/drug-overdose-data.htm (last accessed May 7, 2025) (hereinafter, "2024 VSRR Overdose Death Counts").

[7]  U.S. Department of Justice Drug Enforcement Administration, *2020 National Drug Threat Assessment*, available at https://www.dea.gov/sites/default/files/2021-02/DIR-008-21%202020%20National%20Drug%20Threat%20Assessment_WEB.pdf, at 19 (last accessed May 7, 2025) (hereinafter, "DEA 2020 Assessment"); Streck, Joanna M et al., *Injection of Methamphetamine Has Increased in Boston, Massachusetts: 5 Waves of Centers for Disease Control and Prevention State Surveillance Data*, 17.3 J. OF ADDICTION MEDICINE 349–352 (2023).

combination of increased production and increased purity has been particularly lethal: "There is more meth on the streets today, more people are using it, and more of them are dying."[8]  The number of methamphetamine overdoses in Massachusetts alone increased threefold from 2018 to 2023 (growing from 70 deaths to 216).[9]  Even when not lethal, the physical and emotional effects of methamphetamine abuse are dramatic.  Methamphetamine has a horrific impact on its users and on the community.  And, unlike opioid addiction, there are no approved drugs available for treatment of methamphetamine addiction.[10]  The increasing dangers of methamphetamine in the northeast region were recently profiled in the *New York Times*.[11]  The fact that the Defendant was dealing methamphetamine, which is such a dangerous drug, supports the proposed sentence in this case.

**B.    History and Characteristics of the Defendant**

An appropriate sentence must also consider the history and characteristics of the Defendant.  The Defendant lost his father at a young age and then was placed in foster homes as his mother could not attend to the Defendant and his siblings as she was working overnight shifts to try to make ends meet.  PSR ¶¶ 49, 50.  While in the foster care system, the Defendant suffered an injury that placed him in a coma, was sexually abused, and was exposed to substance abuse.  PSR ¶ 51.  As noted in the PSR, many of Defendant's foster siblings committed suicide, were

---

[8]  Frances Robles, *Meth, the Forgotten Killer, is Back. And It's Everywhere,* appearing at *https://www.nytimes.com/2018/02/13/us/meth-crystal-drug.html* (last viewed May 7, 2025)

[9]  2022 VSRR Overdose Death Counts.

[10]  Carmen Heredia Rodriguez, *"Meth's Resurgence Spotlights Lack of Meds To Combat the Addiction,"* Kaiser Health News, January 14, 2019, appearing at https://khn.org/news/meths-resurgence-spotlights-lack-of-meds-to-combat-the-addiction/ (last viewed May 7, 2025).

[11]  *See* J. Hoffman, "As Fentanyl Deaths Slow, Meth Comes for Maine," *New York Times* (Apr. 16, 2025), *available at* https://www.nytimes.com/2025/04/16/health/meth-maine-fentanyl.html.

victims of murder, and experienced drug overdoses.  PSR ¶ 51.

Defendant's mother passed away when the Defendant was just a teenager.  PSR ¶ 53.  The Defendant had an unstable living situation when he exited foster care at just 17 years old.  PSR ¶ 52.  The Defendant had suicidal thoughts and engaged in self-harm as a child.  PSR ¶ 66.  As an adult, the Defendant experienced some substance abuse issues, including with alcohol, marijuana, and oxycodone, that Defendant attributes to his childhood trauma.  PSR ¶¶ 71-76.

Defendant pursued a plumbing vocational program, a surgical technician radiology program, a paralegal program, and obtained a commercial driver's license after high school.  From 2020 to 2024, Defendant worked as a courier and tractor trailer driver for FedEx, working around 70 hours per week.  In fact, he received an employee of the month award for his work performance.  PSR ¶ 85.

The Defendant's crime of bringing a large amount of methamphetamine into Massachusetts is serious.  However, the Defendant's behavior was likely influenced by his substance abuse issues and mental health issues, which were both exacerbated by trauma he experienced.  The Defendant has shown the ability to be a productive member of society by pursuing multiple forms of education after high school, obtaining a commercial driver's license, and even receiving commendations for performance.

### C.      Deterrence

While it is slightly below the average sentence reported by JSIN (*see* PSR ¶ 113), a sentence of imprisonment for 120 months is by no means a light sentence.  Ten years in prison is a significant penalty that will deter people from engaging in similar behavior.

### D.      Providing for the Needs of the Defendant

The Defendant appears to have both mental health and substance abuse issues.  It appears

that the Defendant has been engaged in some courses and counseling while incarcerated.  PSR ¶¶ 4, 67.  The government hopes that the Defendant continues to engage in and benefit from these programs to help address her mental health and substance abuse issues.

Accordingly, the Government respectfully submits that a sentence of 120 months of imprisonment (which is the mandatory minimum here), a fine within the Guidelines Sentencing Range (unless the Court finds Defendant unable and unlikely to become able to pay a fine), 60 months of supervised release, a $200 mandatory special assessment fee, and forfeiture as described in the plea agreement filed in this matter is a just and appropriate sentence under the circumstances of this case.

Respectfully submitted,

LEAH B. FOLEY
United States Attorney

By:    /s/ Brian J. Sullivan
BRIAN J. SULLIVAN
Assistant United States Attorney

Dated: January 14, 2026

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants.

By:    /s/ Brian J. Sullivan
Brian J. Sullivan
Assistant U.S. Attorney

Date: January 14, 2026